Rodney A. McCARTHY, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10775.

Court of Appeals of Alaska.

Sept. 7, 2012.

Caitlin Shortell, Shortell Gardner LLC, for the Appellant.

Mary A. Gilson, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

COATS, Chief Judge.

Rodney A. McCarthy appeals his conviction for driving under the influence.[1]

McCarthy argues that the trial court should have suppressed his Datamaster breath test result, and all statements he made during the DUI processing, because the officer who administered the breath test did not make an audio recording of the DUI processing. We uphold the trial court's ruling because McCarthy waived this issue through inadequate briefing, because the trial court found that McCarthy was not subjected to interrogation during the DUI processing, and because the trial court found that the officer's failure to record the processing was inadvertent.

McCarthy next argues that it was error for the trial court to allow the State to introduce the reports that verified the calibration of the Datamaster in the absence of live testimony from the authors of these reports; McCarthy contends that the admission of the reports violated his right of confrontation under the United States Constitution. We adhere to our prior decisions (and to the decisions of almost every other jurisdiction to have considered this issue) holding that calibration reports for breath test machines are business records, and that the introduction of these records does not implicate the confrontation clause.

McCarthy further argues that the trial court erred when it refused to instruct the jury that one element of the offense of driving under the influence is that the defendant must be criminally negligent with respect to whether he was too impaired to drive. We conclude that McCarthy's argument in favor of this proposed instruction is based on a mistaken interpretation of our decision in *Valentine v. State*, 155 P.3d 331 (Alaska App. 2007).[2]

McCarthy contends that the trial court erred when it refused to let him introduce prior calibration reports for the Datamaster machine that was used to test his breath.

According to these reports, this Datamaster machine often reported an alcohol content that was slightly higher—between .004 and .008 percent higher—than the target value of the sample being tested, but still within the acceptable margin of error set by law. We uphold the trial court's ruling, both because this variation is within the acceptable margin of error, and also because this amount of variation could not possibly have made a difference in McCarthy's case—since his blood alcohol reading was .214 percent.

Finally, McCarthy argues that the trial court erred in excluding a document showing that, several months after McCarthy's breath test, the Datamaster machine developed a problem: the machine no longer accepted air from its intake tube, leading to breath test readings of 0.00 percent in cases where the person being tested was clearly intoxicated. We uphold the trial court's decision to exclude this evidence—because the evidence of this later Datamaster malfunction had essentially no relevance to the accuracy of McCarthy's breath test.

### Underlying facts and trial court proceedings

On July 10, 2009, Trooper Jack LeBlanc stopped McCarthy's vehicle because McCarthy was weaving in and out of his lane. After investigation, Trooper LeBlanc arrested McCarthy for driving under the influence, and then he transported McCarthy to the station for a breath test. Although the trooper recorded his initial contact with McCarthy, he inadvertently, or through an equipment malfunction, failed to make an audio recording of the DUI processing at the station.

After a fifteen-minute observation period and several attempts, McCarthy eventually provided a breath sample. This sample yielded a test result of .214 percent blood alcohol. McCarthy was charged with driving under the influence.

Before trial, McCarthy moved to suppress his breath test result and all statements he made during the breath testing process be-

---

1. AS 28.35.030(a)(2).

2. *Reversed on other grounds,* 215 P.3d 319 (Alaska 2009).

cause of the trooper's failure to record the processing. McCarthy also requested a *Thorne* jury instruction—*i.e.*, an instruction telling the jury to presume that a recording of the processing would have been favorable to him.[3] After an evidentiary hearing on his motion to suppress, District Court Judge Kevin Miller denied McCarthy's motion. Judge Miller found that the trooper's failure to record was inadvertent. The judge also concluded that the trooper was not required to record the DUI processing because no custodial interrogation occurred, and no incriminating statements were made, during the processing. Judge Miller therefore admitted the breath test result, and he denied McCarthy's request for a *Thorne* instruction.

On a separate issue, McCarthy objected to the admission of the two reports verifying the calibration of the Datamaster on dates before and after his breath test. He argued that admission of these reports without testimony from the authors violated his right to confrontation, and that· the reports lacked proper evidentiary foundation without the live testimony of the authors. Judge Miller rejected these arguments and admitted both documents.

McCarthy moved to admit the Datamaster calibration reports from the fifteen months prior to his breath sample, to show that the Datamaster was repeatedly yielding test results that were slightly higher (between .004 and .008 percent higher) than the actual chemical content of the samples being tested. Judge Miller declined to let McCarthy introduce this evidence. The judge ruled that as long as the testing variations were within the working tolerance of the Datamaster, the evidence was irrelevant.

McCarthy also asked to introduce evidence showing that this Datamaster began malfunctioning some four months after McCarthy's breath test. Again, Judge Miller concluded that this proposed evidence was irrelevant.

McCarthy asked Judge Miller to instruct the jury that, in prosecutions for driving under the influence, the State was required to prove that the defendant was criminally negligent with respect to whether he was too impaired to safely operate a motor vehicle. Judge Miller declined to give this jury instruction.

*The trooper's failure to record the DUI processing does not merit suppression of the Datamaster test result*

█ McCarthy's first claim is that the trial court erred in admitting the Datamaster test result in the absence of an audio or video recording of the DUI processing at the police station. While McCarthy recounts the trial court's findings relating to his suppression motion (in particular, the finding that the trooper's failure to record the DUI processing was inadvertent), he does not present any argument regarding Judge Miller's rulings, he does not articulate which of the judge's findings or rulings he believes to be erroneous, and he does not cite any legal authority. Accordingly, we find that McCarthy has waived this issue by failing to adequately brief it.[4]

█ Moreover, even if McCarthy had not waived this issue, we would affirm the trial court's ruling. Judge Miller found that the trooper did not question McCarthy during the DUI observation period and that McCarthy did not make any incriminating statements during this time. Judge Miller also concluded that the trooper's failure to record was inadvertent. Furthermore, the judge found there was no evidence of any behavior during the processing and testing to suggest that alcohol in McCarthy's mouth affected the Datamaster test result. Because there was no custodial interrogation, because the officer's failure to record was inadvertent, and because there was no evidence of any reason to doubt the test result, no basis exists to suppress the Datamaster result.[5]

3. See *Thorne v. Department of Public Safety*, 774 P.2d 1326, 1331–32 (Alaska 1989).

4. See, e.g., *Kingery v. Barrett*, 249 P.3d 275, 285 (Alaska 2011); *Martinson v. Arco Alaska, Inc.*, 989 P.2d 733, 737–38 (Alaska 1999); *City of Fairbanks v. Rice*, 20 P.3d 1097, 1106 (Alaska 2000); *Vickers v. State*, 175 P.3d 1280, 1287 (Alaska App.2008); *Buckwalter v. State*, 23 P.3d 81, 88 (Alaska App.2001).

5. See *Stephan v. State*, 711 P.2d 1156, 1162–63 (Alaska 1985).

■ With regard to McCarthy's request for a *Thorne* instruction,[6] the trooper's failure to record the DUI processing constitutes a failure to collect evidence, not a destruction of evidence. The general rule is that the State has no duty to collect physical evidence, and that the State's duty to preserve evidence applies only to physical evidence that has actually been gathered.[7] Because McCarthy did not allege (much less show) that the trooper destroyed any evidence, McCarthy was not entitled to a presumption that a recording would have been favorable to him.

*Admission of the verification of calibration without testimony did not violate McCarthy's right of confrontation*

At trial, McCarthy objected to the admission of the two reports that verified the calibration of his Datamaster machine on June 13, 2009 and on August 14, 2009 (*i.e.*, both before and after his July 10th breath test). McCarthy argued that the admission of these reports, without testimony from the people who ran the calibration tests and wrote the reports, violated his right of confrontation. Judge Miller overruled McCarthy's objection to the admission of the reports.

■ On appeal, McCarthy argues that admission of the calibration reports without testimony from the reports' authors violated his right of confrontation under the Sixth Amendment as construed in *Melendez–Diaz v. Massachusetts.*[8]

McCarthy acknowledges that, both before and after *Melendez–Diaz*, this Court has held that Datamaster calibration reports are non-testimonial business records, and that

therefore the admission of these reports does not implicate the confrontation clause. *See Abyo v. State*, 166 P.3d 55, 58–60 (Alaska App.2007), and *Hamilton v. State*, unpublished, Alaska App. Memorandum Opinion No. 5650, 2010 WL 4260608, *3 (October 27, 2010). But McCarthy asks us to overrule *Abyo*.

McCarthy argues that Datamaster calibration reports are prepared in anticipation of criminal litigation, albeit not for any specific case. We rejected this argument in *Abyo*: we concluded (in line with the majority of courts) that reports verifying the calibration of breath testing machines are not "testimonial" evidence for purposes of the confrontation clause, and that these reports may be admitted without the testimony of the individuals who prepared them. *Abyo*, 166 P.3d at 59–60.

Several courts have considered this same issue since the United States Supreme Court issued its decision in *Melendez–Diaz*, and these courts have almost uniformly agreed that breath machine calibration records are non-testimonial.[9] We therefore adhere to our prior decisions on this issue.

McCarthy argues he should have been able to cross-examine the authors of the calibration reports because there was a question as to the accuracy of this particular Datamaster. But this argument does not pertain to the confrontation issue under *Melendez–Diaz*, or to whether the calibration report is "testimonial" for Sixth Amendment purposes. Instead, it is a due process argument regarding McCarthy's right to challenge the accuracy of the Datamaster result. Under Alaska law, the Datamaster result is presumptively admissible if the calibration of the Datamaster

6. *See Thorne v. Department of Public Safety*, 774 P.2d 1326, 1331–32 (Alaska 1989).

7. *Snyder v. State*, 879 P.2d 1025, 1028 (Alaska App.1994), *reversed on other grounds*, 930 P.2d 1274 (Alaska 1996); *March v. State*, 859 P.2d 714, 716 (Alaska App.1993).

8. 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009).

9. *See, e.g., State v. Kramer*, 153 Idaho 29, 278 P.3d 431, 434–38 (App.2012) (distinguishing for confrontation clause purposes between evidence offered as direct proof of an element and evi-

dence that bears only on the admissibility or credibility of other evidence, like verification of calibration reports, inspection reports, and maintenance records); *Commonwealth v. Zeininger*, 459 Mass. 775, 947 N.E.2d 1060, 1069–1070 (2011) (same); *Matthies v. State*, 85 So.3d 838, 843–44 (Miss.2012) (citing cases addressing this issue post-*Melendez–Diaz* ); *see also State v. Britt*, 283 Neb. 600, 813 N.W.2d 434, 439 (2012) (holding that the certification of the alcohol solution used to test the calibration of the breath test instrument is not testimonial).

machine has been verified every sixty days.[10] Once the State offered calibration documents to prove this foundational requirement, the trial court properly admitted McCarthy's Datamaster result.

McCarthy was free to present admissible evidence impeaching the accuracy of the breath test.[11] He could have called the authors of the calibration reports, or any other witness, to explore the issue of the Datamaster's accuracy. But that evidence would go to the weight of the breath test result, not its admissibility.[12]

*The State was not required to prove that McCarthy was criminally negligent with respect to whether he was too impaired to drive*

McCarthy asked Judge Miller to instruct the jury that the State was required to prove, as an element of driving under the influence, that McCarthy was at least negligent with respect to whether he was too impaired to drive. Judge Miller denied McCarthy's request.

■ This Court has repeatedly held that, in prosecutions for driving under the influence, the government need not prove that the defendant acted with any culpable mental state with respect to the circumstance that made the defendant's driving illegal—either the fact that the defendant was impaired by intoxicants, or the fact that the defendant's blood-alcohol level exceeded the legal limit.[13]

Judge Miller relied on this line of cases when he ruled that the State was not required to prove that McCarthy was aware of his impairment, or even that McCarthy should have been aware of his impairment (*i.e.,* that McCarthy acted negligently with respect to this circumstance).

McCarthy argues, however, that this Court departed from this line of authority when we issued our decision in *Valentine v. State*, 155 P.3d 331 (Alaska App.2007).[14]

The defendant in *Valentine* argued that, despite our prior decisions on this point, it was unconstitutional to allow the government to convict motorists of driving under the influence unless the government proved that the motorists were at least negligent with respect to the fact that they were impaired, or that their blood alcohol level exceeded the legal limit. In support of this argument, the defendant in *Valentine* relied on the Alaska Supreme Court's decision in *State v. Hazelwood*, 946 P.2d 875 (Alaska 1997).

The *Hazelwood* decision holds that when conduct is criminal only under a particular circumstance, the due process clause requires the government to prove that the defendant was at least negligent with respect to that circumstance. *Hazelwood*, 946 P.2d at 879. Relying on *Hazelwood*, the defendant in *Valentine* argued that the offense of driving under the influence was governed by the same rule: driving is legal unless the motorist is under the influence, and therefore the

**10.** AS 28.35.033(d); 13 AAC 63.100.

**11.** *Gilbreath v. Anchorage*, 773 P.2d 218, 222 (Alaska App.1989); *see Williams v. State*, 884 P.2d 167, 174 (Alaska App.1994), *abrogated on other grounds in State v. Coon*, 974 P.2d 386 (Alaska 1999).

**12.** *Gilbreath*, 773 P.2d at 222; *Williams*, 884 P.2d at 174.

**13.** *See Morgan v. Anchorage*, 643 P.2d 691, 692 (Alaska App.1982) (rejecting the claim that the government must prove that the motorist was aware that they were under the influence); *Van Brunt v. State*, 646 P.2d 872, 873 (Alaska App. 1982) (holding that a conviction for driving under the influence does not require proof that the motorist knew they were under the influence, or that their blood or breath alcohol level exceeded the legal limit; the fact that the motorist knowingly drank and drove was enough to support a

conviction); *Cooley v. Anchorage*, 649 P.2d 251, 253 n. 3 (Alaska App.1982) (rejecting the claim that the Anchorage ordinance defining the offense of driving under the influence violated the due process clause because it required no criminal intent, and because motorists had no way of knowing whether their blood or breath alcohol had reached a level that placed them in violation of the ordinance); *Hoople v. State*, 985 P.2d 1004, 1006 (Alaska App.1999) (stating that the offense of driving under the influence "does not require proof of any culpable mental state regarding ... the fact that the driver was intoxicated or that the driver's blood-alcohol content exceeded [the legal limit]"); *State v. Simpson*, 53 P.3d 165, 167 (Alaska App.2002) (noting that this Court had "[previously] rejected the notion that a[DUI] defendant must know that they are under the influence").

**14.** *Reversed on other grounds*, 215 P.3d 319 (Alaska 2009).

government should be required to prove that the motorist was at least negligent with respect to the circumstance that they were under the influence. *See Valentine*, 155 P.3d at 343.

This Court rejected the defendant's argument because we concluded that when the government proves that a motorist (1) knowingly consumed intoxicants and (2) knowingly operated or took control of a motor vehicle, this of itself establishes that the motorist was at least negligent with respect to the circumstance that they were under the influence. *Valentine*, 155 P.3d at 342–43. Here is the pertinent portion of our opinion in *Valentine:*

> To convict a defendant of driving while under the influence, the State is not required to prove any *mens rea* with respect to the circumstance of having consumed too much alcohol to legally drive. But the State must prove that the defendant was legally intoxicated (either because his blood alcohol level met or exceeded the statutory limit within four hours of driving, or because he was under the influence at the time of driving) and [must prove that the defendant] knowingly drank and drove; it is implicit in the proof of these elements that the defendant was criminally negligent as to the circumstance of being too impaired to legally drive. The conduct of consuming alcohol puts a person on notice that he may be [or become] impaired.
>
> . . .
>
> [P]roof that the defendant was legally intoxicated and that the defendant knowingly consumed alcohol and drove is sufficient to establish that the defendant was negligent with respect to the circumstance that he was too impaired to legally drive.

*Valentine*, 155 P.3d at 342 & 343 (citation omitted).

In McCarthy's brief to this Court, he focuses on one portion of this passage from *Valentine:* the portion where we declared that, when the government proves that the defendant was intoxicated, and that the defendant knowingly drank alcoholic beverages and knowingly drove a vehicle, "it is implicit . . . that the defendant was criminally negli-

gent as to the circumstance of being too impaired to legally drive."

McCarthy interprets this language to mean that the offense of driving under the influence implicitly requires proof of an additional element: that the defendant acted negligently with respect to the circumstance that they were impaired. But this is a misreading of *Valentine*.

In *Valentine*, we explicitly re-affirmed our line of cases holding that the government is *not* required to prove that the defendant acted with any culpable mental state with respect to the fact that they were impaired, or that their blood alcohol level was above the legal limit. *Id.* at 342–43. The above-quoted passage from *Valentine* was not meant to disavow this line of cases. Rather, the passage explains why this line of cases is consistent with the requirements of the due process clause, as interpreted in *Hazelwood*.

*Hazelwood* holds that when an activity is illegal only under a particular circumstance, the due process clause requires the government to prove (as a minimum predicate for imposing criminal liability) that the defendant acted at least negligently with respect to that circumstance. *Valentine* holds that, in prosecutions for driving under the influence, this due process requirement is implicitly *satisfied* by proof that the defendant knowingly drank alcoholic beverages and either became impaired or drank to the point where their blood alcohol level exceeded the legal limit.

McCarthy suggests that if *Valentine* is interpreted in this manner, it leads to results that violate the rule against irrebuttable or conclusive presumptions in criminal cases.[15] McCarthy interprets *Valentine* to say (1) that the offense of driving under the influence requires proof of an additional element (proof that the defendant acted negligently with respect to the fact of their impairment), and (2) that a finder of fact can presume, based on proof that the defendant knowingly drank alcoholic beverages and became impaired, that this additional element has been proved.

---

15. *See Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

But, again, this argument is based on a misreading of *Valentine*. As we just explained, the *Valentine* decision rejects the notion that there is an extra "negligence" element to be proved in a DUI prosecution. Rather, *Valentine* reiterates that the government need not prove any culpable mental state with respect to the circumstance that the defendant was impaired, or that the defendant's blood alcohol level exceeded the legal limit. *Valentine* explains that this is sufficient to satisfy the demands of due process because, as a matter of law, proof that the defendant knowingly drank alcoholic beverages, coupled with proof that the defendant became impaired, or that the defendant drank to the point where their blood alcohol level exceeded the legal limit, is itself sufficient to meet the minimal due process requirement for imposing criminal liability.

For these reasons, we uphold Judge Miller's rejection of McCarthy's proposed jury instruction.

*The trial court did not abuse its discretion in refusing to admit the Datamaster calibration reports from the prior fifteen months*

■ At trial, McCarthy moved to admit the calibration reports for his Datamaster from the fifteen months preceding his breath test. These calibration reports showed that the Datamaster repeatedly yielded test results that were slightly higher than the target value of the samples being tested (between .004 and .008 percent higher), but still within the working tolerance of the instrument.

McCarthy argued that this evidence was admissible to show that the Datamaster used for his breath test was unreliable and not properly calibrated, and he argued that he had a due process right to introduce this evidence.

Judge Miller ruled that these calibration reports were irrelevant—because the testing variations shown in these reports were all within the acceptable working tolerance of the Datamaster, and because, under AS 28.90.020, it is irrelevant whether a Datamaster machine has testing variations within this working tolerance.[16]

Judge Miller told McCarthy that, notwithstanding the statute, he would allow McCarthy to introduce the calibration reports to attack the accuracy of the Datamaster if McCarthy had an expert witness who could explain how testing variations within the working tolerance of the instrument were somehow relevant to demonstrating the possibility that this Datamaster machine might be susceptible to testing variations that were *outside* the working tolerance of the machine. McCarthy did not present such an expert.

■ On appeal, McCarthy argues that Judge Miller abused his discretion when he denied McCarthy's motion to introduce the calibration reports from the fifteen months prior to his breath test. This issue is inadequately briefed. McCarthy does not explain why Judge Miller's ruling was wrong, and he does not cite any law to support his argument.

But even if McCarthy had adequately briefed this issue, we would affirm Judge Miller's ruling. Under AS 28.90.020, a breath test result from a properly calibrated instrument is not affected by the instrument's testing variations, as long as those variations are within the machine's working tolerance. In other words, the fact that the breath test result may be higher or lower than the actual alcohol content of the suspect's blood is irrelevant so long as the machine is functioning within the legally prescribed working tolerance.

As we explained, Judge Miller told McCarthy that he *could* use this evidence to challenge the validity or accuracy of the breath test result if McCarthy presented an expert witness who could explain how variations in the Datamaster calibration results might indicate that, in actual use, the machine would

16. AS 28.90.020 reads: "Breath test result validity. Except for an offense under AS 28.35.280, if an offense described under this title requires that a chemical test of a person's breath produce a particular result, and the chemical test is administered by a properly calibrated instrument approved by the Department of Public Safety, the result described by statute is not affected by the instrument's working tolerance."

yield test results outside the bounds of its working tolerance. But McCarthy did not do so.

Moreover, McCarthy does not explain what prejudice he suffered from the exclusion of this evidence. The Datamaster's calibration tests yielded only slight variations from the norm: test results that were between .004–.008 percent higher than the target values of the samples being tested. McCarthy's test result was .214 percent. Even if McCarthy's Datamaster was consistently high by as much as .008 percent, McCarthy's blood alcohol content would still have been significantly over the legal limit (.08 percent).

Because this issue is inadequately briefed, McCarthy did not produce any evidence suggesting that the prior calibration reports were relevant, and because the potential inaccuracy of the Datamaster was harmless beyond a reasonable doubt, we reject McCarthy's claim.

*The trial court did not err in excluding evidence of a Datamaster malfunction that occurred months after McCarthy's breath test*

■ McCarthy argues Judge Miller erred by not allowing him to question a police officer about a malfunction that arose in this same Datamaster machine some four months after McCarthy's breath test. McCarthy argues that this evidence was relevant because it cast doubt on his breath test.

Ketchikan Police Officer Derek McGarrigan testified that the Datamaster used to test McCarthy's breath on July 10, 2009 began to malfunction on approximately November 21, 2009. Officer McGarrigan testified that an October 2009 test of the Datamaster's calibration indicated that the Datamaster was functioning properly at that time. But on November 21st, the machine was used to test the breath of an arrestee who was obviously intoxicated, and the test result was 0.00 percent.

After the machine malfunctioned in a similar manner a couple of days later, it was taken out of service. (In between the two malfunctions, the Datamaster functioned correctly.) Inspection of the machine revealed that the valve which allowed the breath sample to enter the testing chamber was not working; the valve was not allowing the breath sample to enter the chamber to be tested.

McCarthy asserts that the jury could have concluded the Datamaster was malfunctioning in July if it malfunctioned in November. But Judge Miller reasonably rejected this proposition. There was no evidence of any malfunction in the Datamaster before November 21, 2009, and McCarthy provided no evidence that the November malfunction could potentially have affected his July breath test result.

Furthermore, the type of malfunction that occurred here—a valve failure—prevented an arrestee's breath sample from reaching the testing chamber, thus leading to a false reading of 0.00 percent (*i.e.,* absolutely no alcohol), even when the suspect was clearly intoxicated. McCarthy's Datamaster breath test result was .214 percent. Because the alcohol in McCarthy's breath triggered this reading in the Datamaster, it is obvious that the valve was working at the time. In other words, the malfunction that occurred in November—a complete blockage of intake air—could not have occurred during McCarthy's breath test.

For these reasons, we conclude that Judge Miller properly excluded the evidence of the November malfunction.

*Conclusion*

The judgment of the district court is AFFIRMED.

Judge MANNHEIMER, concurring.

I write separately to address the question of whether it violates a DUI defendant's right of confrontation when the government relies on hearsay reports to establish that the breath test machine was properly calibrated at the time of the defendant's breath test.

I acknowledge that this Court's lead opinion correctly characterizes the case law on this issue. Both before and after the United States Supreme Court's decision in *Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 129

S.Ct. 2527, 174 L.Ed.2d 314 (2009), courts from around the country have overwhelmingly concluded that breath test calibration reports are not "testimonial" for purposes of the confrontation clause, and thus the government can introduce these reports without presenting the live testimony of the people who wrote the reports.

See State v. Lindner, 227 Ariz. 69, 252 P.3d 1033, 1035–36 (App.2010); Jacobson v. State, 306 Ga.App. 815, 703 S.E.2d 376, 379 (2010); State v. Kramer, 153 Idaho 29, 278 P.3d 431, 434–38 (App.2012); People v. Jacobs, 405 Ill. App.3d 210, 345 Ill.Dec. 335, 939 N.E.2d 64, 72 (2010); Ramirez v. State, 928 N.E.2d 214, 219–220 (Ind.App.2010); State v. Johnson, 43 Kan.App.2d 815, 233 P.3d 290, 299 (2010); Commonwealth v. Zeininger, 459 Mass. 775, 947 N.E.2d 1060, 1067–1070 (2011); Matthies v. State, 85 So.3d 838, 843–44 (Miss.2012); People v. Hulbert, 93 A.D.3d 953, 939 N.Y.S.2d 661, 662–63 (N.Y.App.2012); People v. Pealer, 89 A.D.3d 1504, 933 N.Y.S.2d 473, 474–75 (2011); State v. Bergin, 231 Or.App. 36, 217 P.3d 1087, 1089–1090 (2009); Commonwealth v. Dyarman, 33 A.3d 104, 107–08 (Pa.App.2011); Settlemire v. State, 323 S.W.3d 520, 521–22 (Tex.App.2010); United States v. Forstell, 656 F.Supp.2d 578, 580–82 (E.D.Va.2009). See also State v. Britt, 283 Neb. 600, 813 N.W.2d 434, 439 (2012) (holding that the certification of the alcohol solution used to test the calibration of the breath test machine is not testimonial).

Several of these cases rely on footnote 1 of the Melendez–Diaz opinion:

Contrary to the dissent's suggestion[,] ... we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case.... *[D]ocuments prepared in the regular course of equipment maintenance may well qualify as nontestimonial records.* See infra, at 2550–2551, 2552.

Melendez–Diaz, 557 U.S. at 311 n. 1, 129 S.Ct. at 2532 n. 1 (emphasis added).

Yet despite the judicial consensus on this issue, I find this result troubling for the reasons explained in Justice David Chandler's dissent in Matthies v. State, 85 So.3d 838, 844–47 (Miss.2012).

When a court allows the government to offer these certificates of calibration in hearsay form, the court is in effect saying, "We can trust the state officials who filled out these certificates—specifically, we can trust their assertions that the breath test machine was working properly—because this is just another business record kept by the government."

But a breath test machine is not just another piece of equipment that the government maintains in the course of its operations. Rather, a breath test machine has a single primary function: to identify motorists whose blood alcohol level exceeds the legal limit, and who can therefore be prosecuted for driving under the influence. In many instances, it is undisputed that the defendant was operating a motor vehicle, so a conviction is virtually assured if the government introduces evidence that the defendant's breath test result was .08 percent or greater.

Under Alaska law, if the government wishes to introduce the defendant's breath test results, the government must first offer proof that the breath test machine was properly calibrated.[1] Thus, the calibration reports have one primary purpose: to provide the needed evidentiary foundation for introducing breath test results in criminal prosecutions.

In Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court stated that the category of "testimonial" hearsay included "statements ... made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later [criminal] trial." Id., 541 U.S. at 52, 124 S.Ct. at 1364.

And in Melendez–Diaz, the Supreme Court held that the defendant's right of confrontation was violated when the government introduced three "certificates of analysis" prepared by the crime laboratory—certificates

---

1. See AS 28.35.033(d) and 13 AAC 63.100(c).

attesting that the substance found in the defendant's possession was cocaine. The Court held that these certificates fell within the "core class of 'testimonial' statements" covered by the confrontation clause, and did not constitute exempt "business records", because the government's primary reason for creating these certificates was to use them in court proceedings. *Id.,* 129 S.Ct. at 2532–33, 2536, 2538.

If this is the test, then there is a good argument that certificates or reports attesting that a breath test machine is properly calibrated are likewise "testimonial" for Sixth Amendment purposes. The argument for treating these calibration reports as "testimonial" is considerably strengthened by the fact that the government does not store the defendant's breath sample, thus making it impossible for the defendant or their attorney to re-run the breath test and thereby challenge the government's breath test result.

However, I join my colleagues in rejecting this claim of error because I conclude that, under Alaska law, the potential confrontation problem is cured by the Alaska Supreme Court's decision in *Gundersen v. Anchorage,* 792 P.2d 673 (Alaska 1990). In *Gundersen,* the supreme court held that, under the due process clause of the Alaska Constitution, a driver arrested for driving under the influence has the right to a reasonable opportunity to challenge the accuracy of a police-administered breath test—either by having the government preserve the breath sample for later re-testing, or by having the government immediately offer the arrested motorist the opportunity for an independent chemical test. *Id.* at 675–77.

The *Gundersen* decision prompted the Alaska Legislature to enact AS 28.35.033(e):

[The arrested motorist] may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of the person's own choosing administer a chemical test in addition to the test administered at the direction of a law enforcement officer. . . . The [officer] who administers the chemical test shall clearly and expressly inform the [motorist] of [the motorist's] right to an independent test de-

scribed under this subsection, and, if the [motorist] requests an independent test, the department shall make reasonable and good-faith efforts to assist the [motorist] in contacting a person qualified to perform an independent chemical test of the [motorist's] breath or blood.

Because of *Gundersen* and because of AS 28.35.033(e), I conclude that McCarthy's right of confrontation was preserved even though the State was allowed to introduce the hearsay calibration reports.