NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts.*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@appellate.courts.state.ak.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | | |
|---|---|---|
| LINDEN KARL FYFE, | ) | |
| | ) | Court of Appeals No. A-11058 |
| Appellant, | ) | Trial Court No. 3PA-10-3464 CR |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| STATE OF ALASKA, | ) | |
| | ) | |
| Appellee. | ) | No. 2425 — August 29, 2014 |
| | ) | |

Appeal from the Superior Court, Third Judicial District, Palmer, David L. Zwink, Judge.

Appearances: Kelly Taylor, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Mary A. Gilson, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge ALLARD.

---

[*]   Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution and Administrative Rule 24(d).

Linden Karl Fyfe was charged with felony driving under the influence based, in part, on a Datamaster test showing that his blood alcohol level was .117 percent. At trial Fyfe raised the defense of necessity, arguing that his driving was justified because his girlfriend's daughter had been rushed to the hospital after an apparent seizure. The jury rejected that defense and convicted Fyfe.

The superior court sentenced Fyfe to 20 months with 16 months suspended. The court also imposed a $20,000 fine — double the mandatory minimum fine for felony driving under the influence — based on the State's allegation that the offense took place in a traffic safety corridor.

Fyfe contends that the $20,000 fine is illegal. He argues that the legislature did not intend to require courts to impose a double fine for felony driving under the influence in a traffic safety corridor. Based on the legislative history of the statute, we agree and therefore vacate Fyfe's $20,000 fine. Because the sentencing judge's remarks make clear that he would have imposed the $10,000 mandatory minimum fine for Fyfe's offense if he believed he had the discretion to do so, we direct the superior court to modify the judgment to reflect this mandatory minimum fine.

Fyfe also argues that his Sixth Amendment right to confront the witnesses against him was violated because the court allowed the State to introduce reports verifying the calibration of the Datamaster machine used for his breath test even though Fyfe had no opportunity to cross-examine the author of the reports. Fyfe concedes that the admission of these hearsay reports was authorized under our decision in *Abyo v. State*,[1] but he argues that *Abyo* and the cases that follow it should be overruled. We decline to overrule *Abyo* and find no violation of Fyfe's confrontation rights.

---

[1] 166 P.3d 55 (Alaska App. 2007).

*Why we conclude that the legislature did not intend AS 28.90.030(a) to double the range of fines for felony driving under the influence*

Under AS 28.90.030(a), a person is subject to a double fine if the person "violates a provision of [Title 28] or a regulation adopted under the authority of [Title 28] within a ... traffic safety corridor."[2] This provision, on its face, would seem to mandate a double fine for any driving under the influence offense committed in a traffic safety corridor because the offense of driving under the influence is a provision of Title 28. However, the plain meaning of a statute does not necessarily control in Alaska:

> In interpreting a statute, we look to the plain meaning of the statute, the legislative purpose, and the intent of the statute. We have declined to mechanically apply the plain meaning rule when interpreting statutes, adopting instead a sliding scale approach: The plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be. We apply this sliding scale approach even if a statute is facially unambiguous.[3]

In *Johnnie v. State*,[4] an unpublished case, we assumed that the double-fine requirement in AS 28.90.030(a) applied to a person convicted of driving under the influence. But the issue was not actually litigated in that case: Johnnie did not contest that he would be subject to a double fine if his offense occurred in a traffic safety corridor; instead, he contested the trial court's finding that he admitted, as part of his plea

---

[2] "[A] 'traffic safety corridor' means a portion of a highway on which signs have been erected designating that portion as a traffic safety corridor under AS 19.10.075." AS 28.90.990(a)(27).

[3] *State, Dep't of Commerce, Community & Economic Development, Div. of Ins. v. Alyeska Pipeline Service Co.*, 262 P.3d 593, 597 (Alaska 2011) (internal quotation marks and citations omitted).

[4] 2013 WL 6410182 (Alaska App. Dec. 6, 2013) (unpublished).

agreement, that his offense occurred within a traffic safety corridor.[5] Consequently, the scope of the double-fine requirement in AS 28.90.030(a) is a question of first impression for this Court.

*The 1998 legislature intended the double-fine requirement to apply to traffic offenses*

Alaska Statute 28.90.030(a) has its origins in a statute enacted in 1999, former AS 28.40.070, which required double fines for "offenses committed within highway work zones."[6] The legislation that created that statute appears to have been first introduced in 1997 as House Bill 87. That bill provided in pertinent part:

> **Fines for speeding offenses committed within highway work zones doubled**. Whenever a person violates a provision of [Title 28] relating to speeding, or a regulation adopted under the authority of [Title 28] relating to speeding, or is convicted of reckless driving under AS 28.35.040 or negligent driving under AS 28.35.045 within a highway work zone, notwithstanding the amount of the fine or the maximum fine set under this title, the fine, or maximum fine, is double the amount provided in this title.[7]

---

[5]   *Id.* at *1.

[6]   Ch. 64, § 2, SLA 1998. The statute enacted by this legislation, former AS 28.40.070, provided:

> **Fines for offenses committed within highway work zones doubled.** Whenever a person violates a provision of this title or a regulation adopted under the authority of this title within a highway work zone, notwithstanding the amount of the fine or the maximum fine set under this title, the fine, or maximum fine, is double the amount provided in this title.

[7]   H.B. 87, 20th Leg., 1st Sess. (as introduced).

Thus, as originally conceived, the legislation would have doubled fines only for three specified offenses committed in highway work zones: speeding, negligent driving, and reckless driving. Although House Bill 87 was discussed in committee, it was never enacted into law.[8]

In 1998, some of the language from House Bill 87 was incorporated into Senate Bill 304.[9] That legislation, as introduced, contained the same language as the current version of AS 28.90.030(a) (minus the 2006 amendment extending the statute to traffic safety corridors).[10] Thus, instead of enacting the House bill, which was targeted at three specific traffic and motor vehicle offenses, the legislature opted for the seemingly broader language doubling fines "[w]henever a person violates a provision of [Title 28] or a regulation under the authority of [Title 28] within a highway work zone."[11]

Although this language on its face suggests that the legislature intended the double-fine requirement to apply to *all* traffic infractions, equipment violations, and motor vehicle criminal offenses enumerated in Title 28 of the Alaska Statutes, Title 13 of the Alaska Administrative Code, and some Title 2 regulations, the legislative history does not support such a broad construction of the statute. Sen. Dave Donley, the sponsor of Senate Bill 304, told the Senate Transportation Committee that the bill was intended to "double fines for *moving traffic violations* in construction zones."[12] Donley

---

[8] *See* 1997 House Journal 137.

[9] S.B. 304, 20th Leg., 2nd Sess. (as introduced).

[10] *Id.*; *see also supra* note 6.

[11] Ch. 64, § 2, SLA 1998.

[12] Minutes of Senate Transportation Committee, S.B. 304, Tape 98-4, Side A (Feb. 24, 1998) (emphasis added).

emphasized that the legislation "does not deal with criminal law, only traffic violations."[13]  In this context, a state trooper informed the committee that the maximum fine for a traffic infraction (unless otherwise provided by statute) was $300.[14]  From this discussion, it appears that the legislature anticipated that the doubled fines that would result from enacting Senate Bill 304 would generally not exceed $600.

At the same time, and in the same bill, the legislature amended AS 28.05.151, the statute that directs the supreme court to set bail, and municipalities to establish fines, for motor vehicle and traffic offenses that are amenable to disposition without court appearance.[15]  The legislature added the following subsection to that statute:

> (d) The supreme court, in establishing scheduled amounts of bail under this section, and each municipality that establishes or has established a fine schedule under this section shall provide that the scheduled amount of bail or fine, as applicable, for a motor vehicle or traffic offense that is committed in a highway work zone shall be double the amount of the bail or fine for the offense if it had not been committed in a highway work zone.[16]

(In 2006, the legislature amended this subsection to add traffic safety corridors.[17])

---

[13]  *Id.*

[14]  Minutes of Senate Transportation Committee, S.B. 304, testimony of Capt. Ted Bachman, Alaska State Troopers, Tape 98-4, Side B (Feb. 24, 1998).

[15]  *See Putnam v. State*, 930 P.2d 1290, 1293 (Alaska App. 1996) (statutes enacted together are read *in pari materia*).

[16]  Ch. 64, § 1, SLA 1998.

[17]  Ch. 45, § 2, SLA 2006.

Thus, at a minimum, the 1998 legislature intended the double-fine requirement to apply to offenses listed in the bail and fine schedules established under AS 28.05.151(a) — that is, to non-criminal offenses amenable to disposition without court appearance.[18] Because the sponsor of Senate Bill 304 clearly expressed an intent to limit double fines in highway work zones to non-criminal traffic offenses, it seems likely that the legislature understood the double-fine requirement to apply *only* to the offenses included in these schedules — that is, only to offenses amenable to disposition without court appearance — and not to fines imposed as part of a sentence for a criminal offense. But we do not need to resolve that broader issue in this case, because the only question before us is whether the legislature intended the statute to double fines for felony driving under the influence. Based on our review of the legislative history, we conclude that the 1998 legislature did not intend to double fines for felony driving under the influence in highway work zones.

---

[18]    The bail amounts and fines established under AS 28.05.151(a) are the maximum fines for those offenses, notwithstanding the higher maximum fines that might be authorized elsewhere in the Alaska Statutes. Under AS 12.25.230(c), "[i]f a person cited for an offense for which an amount of scheduled bail or fine has been established appears in court and is found guilty, the penalty imposed for the offense may not exceed the bail or fine established for the offense." The bail amounts established by the Alaska Supreme Court in Administrative Rule 43.1, and the fines established by the Municipality of Anchorage in AMC 9.48.130, do not exceed $300 (the statutory maximum for an infraction under AS 28.90.010(d)).

*The 2006 legislature did not express an intent to change the 1999 law to double fines for felony driving under the influence*

In 2006, the legislature amended the 1999 statute to extend the double-fine requirement to traffic safety corridors.[19]  Otherwise the statute remained unchanged. This suggests that the 2006 legislature did not intend to alter the meaning or reach of the 1999 statute — other than to extend it to traffic safety corridors.  "It is a general rule in the interpretation of statutes that provisions of an original act which are repeated in an amendment are considered as a continuation of the original act."[20]

This conclusion is supported by the governor's transmittal letter accompanying the 2006 legislation.  Referring to the 1999 statute, AS 28.40.070, the governor stated that:

> the provisions of ... AS 28.40.070 currently provide for double fines or bail for motor vehicle or traffic offenses in areas designated as highway work zones.  These provisions would be amended by adding references to traffic safety corridors.[21]

---

[19]  *See* Ch. 45, § 4, SLA 2006.  The underlined text was added:
> **Fines for offenses committed within highway work zones and traffic safety corridors doubled**.  Whenever a person violates a provision of this title or a regulation adopted under the authority of this title within a highway work zone or traffic safety corridor, notwithstanding the amount of the fine or the maximum fine set under this title, the fine, or maximum fine, is double the amount provided in this title.

[20]  *Green v. State*, 462 P.2d 994, 1000 (Alaska 1969); *see also Warren v. Thomas*, 568 P.2d 400, 403 (Alaska 1977).

[21]  January 31, 2006, governor's transmittal letter for S.B. 261, 2006 Senate Journal
(continued...)

As recounted above, the only explicit change the 2006 legislature made to the statutory subsection at issue — AS 28.40.070 at the time of enactment, now renumbered AS 28.90.030(a) — was to extend its application to traffic safety corridors.

At the same time, the legislature enacted AS 19.10.075(a), which gave the Department of Transportation and Public Facilities the authority to create traffic safety corridors.[22] That subsection provides in pertinent part:

> **Designation of traffic safety corridors; fines**. (a) To promote traffic safety, the department may designate a portion of a highway to be a traffic safety corridor. The commissioner shall establish criteria for the designation and continuation of traffic safety corridors. ... A *motor vehicle or traffic offense*[23] committed in a traffic safety corridor is subject to a double fine as provided in AS [28.90.030[24]]. The department shall erect signs designating traffic safety corridors and alerting the public that motor vehicle and traffic offenses committed within a corridor are subject to double fines.[25]

The State argues that this language in AS 19.10.075(a) (in particular, the language characterizing the double-fine requirement in AS 28.90.030 as applying to any "motor vehicle or traffic offense") expresses the legislature's intent to require double

---

[21] (...continued)
2037.

[22] Ch. 45, § 1, SLA 2006.

[23] Emphasis added. The sentence containing this italicized language was included in the bill as originally introduced. S.B. 261, 24th Leg., 2nd Sess. (as introduced, Feb. 1, 2006).

[24] In 2007, "AS 28.90.030" was substituted for "AS 28.40.070" to reflect the 2006 renumbering of AS 28.40.070. *See* Revisor's notes following AS 19.10.075.

[25] AS 19.10.075(a) (emphasis added).

fines in traffic safety corridors for *all* motor vehicle and traffic offenses, including driving under the influence, regardless of the 1998 legislature's intent.

We are not persuaded by this argument. As we explained earlier, when the legislature added subsection (d) to AS 28.05.151 in 1998, it used the phrase "motor vehicle or traffic offense" to refer to offenses the supreme court and municipalities determined were amenable to disposition without court appearance. This same language was carried over into the 2006 version of AS 28.05.151(d). Thus, both legislatures used the phrase "motor vehicle or traffic offense" in reference to these schedules of non-criminal traffic and motor vehicle offenses. Moreover, we think if the 2006 legislature had intended to significantly expand AS 28.90.030(a) to include motor vehicle criminal offenses such as felony driving under the influence, as the State argues, it would have done so explicitly in AS 28.90.030(a), rather than indirectly in AS 19.10.075(a).

It might be that legislators in 2006 assumed — incorrectly, but reasonably given the broad language of the statute — that the 1999 statute already doubled fines for criminal motor vehicle offenses committed in highway work zones. If the 2006 legislature misconstrued the 1999 law in this manner and believed that this was the law it was extending to traffic safety corridors, that intent would seem to control.[26]

But the legislative history of the 2006 legislation does not support this view. That history contains multiple direct references to doubling fines for moving traffic violations, particularly speeding, but there is no direct reference to the bill, in the form

---

[26] *Cf. McKinley v. State*, 275 P.3d 567, 573 (Alaska App. 2012).

that was enacted,[27] doubling fines for driving under the influence or other criminal motor vehicle offenses.[28]

As the State points out, committee debate did touch on the enforcement of drunk driving laws. But because a portion of the fines collected from the traffic safety corridor program was earmarked for increased enforcement efforts,[29] we do not read

---

[27] As noted below, there was discussion about extending the bill to criminal motor vehicle offenses in Title 11, but this idea was rejected and no amendment was offered.

[28] *See* Fiscal Note No. 4, H.C.S. C.S.S.B. 261, 24th Leg., 2nd Sess. (published Apr. 26, 2006) (noting that the legislation "provides for enhanced fines related to motor vehicle traffic offenses committed within a designated safety corridor"); Minutes of Senate Transportation Committee, S.B. 261, testimony of Lt. James Helgoe, Alaska State Troopers, 2:08:24 p.m. (Feb. 9, 2006) (stating that the legislation "would act as a deterrent for speeders"); Minutes of House Transportation Committee, S.B. 261, testimony of John MacKinnon, Deputy Commissioner of Highways and Public Facilities, 2:14:32 p.m. (Mar. 21, 2006) and Minutes of Senate Finance Committee, S.B. 261, testimony of MacKinnon, 9:07:11 a.m. (Mar. 21, 2006) (stating that the legislation would allow double "traffic fines" in traffic safety corridors); Minutes of House Judiciary Committee, S.B. 261, testimony of MacKinnon, 2:30:01 p.m. (Apr. 12, 2006) (noting that speeding fines generally ranged from $75 to $100, and that "doubling those fines [would] result in a lot of money"); Minutes of Senate Finance Committee, S.B. 261, questioning by Co-Chair Lyda Green, 9:33:15 a.m. (Mar. 21, 2006) (asking whether doubling fines in highway construction zones had made a "notable difference" in speeding); Minutes of House Finance Committee, S.B. 261, statement of Co-Chair Mike Chenault, 3:51:38 p.m. (Apr. 25, 2006) (suggesting that the intent of the legislation was to "fine careless drivers"); Minutes of Senate Transportation Committee, S.B. 261, testimony of Director Jeff Ottesen, Division of Program Development, Department of Transportation and Public Facilities, 1:36:40 p.m. (Feb. 9, 2006) (stating that the intent of the legislation was to "keep [the] numbers of accidents down"); Minutes of Senate Transportation Committee, S.B. 261, testimony of Senator Gene Therriault, 1:38:53 p.m. (Feb. 9, 2006) (noting that Virginia had set a maximum fine of $500 in traffic safety corridors, on the theory that a definite fine would be a more effective deterrent).

[29] AS 19.10.075(b); Minutes of Senate Finance Committee, S.B. 261, testimony of Deputy Commissioner of Highways and Public Facilities John MacKinnon, 9:07:11 a.m. (Mar. 21, 2006) (stating that the legislation would "couple increased enforcement with

(continued...)

these discussions as demonstrating a legislative intent to double fines for driving under the influence in traffic safety corridors. Although legislators were told that an estimated twenty to thirty percent of motor vehicle accidents were known to involve alcohol or controlled substances,[30] the legislative history is silent on the substantial fines that might be collected for driving under the influence offenses committed in traffic safety corridors. (In 2006, as now, a first misdemeanor DUI offense carried a fine of not less than $1500 and a felony offense carried a fine of not less than $10,000.[31])

We acknowledge that, in the House Judiciary Committee, Rep. Max Gruenberg questioned whether the requirement of double fines in traffic safety corridors should be extended beyond Title 28 to vehicular crimes penalized in Title 11, such as vehicular homicide (criminally negligent homicide committed by means of a vehicle) or assault with a dangerous instrument (third-degree assault).[32] This discussion suggests that Rep. Gruenberg, at least, viewed the bill as applying to all motor vehicle offenses listed in Title 28. But the Department of Law's response to this inquiry conveyed that, contrary to this assumption, it did not understand the legislation to double fines for

---

[29] (...continued)
double traffic fines" and the resulting increased revenue would "be funneled to the Department of Public Safety to provide for the expense of the increased enforcement" in traffic safety corridors); Minutes of House Transportation Committee, S.B. 261, testimony of MacKinnon, 2:14:32 p.m. (Mar. 21, 2006) (stating that the legislation was "aimed at getting a handle on driver behavior by allowing the increase of enforcement and collecting double traffic fines"); January 31, 2006, governor's transmittal letter for S.B. 261, 2006 Senate Journal 2037 (noting that 50 percent of the fines would be allocated to highway safety programs).

[30] Minutes of Senate Transportation Committee, S.B. 261, testimony of Lt. James Helgoe, Alaska State Troopers, 2:15:46 p.m. (Feb. 9, 2006).

[31] Former AS 28.35.030(b)(1)(A), (n)(1) (2006).

[32] Minutes of House Judiciary Committee, S.B. 261, 2:43:00 p.m. (Apr. 12, 2006).

felony motor vehicle offenses, which the Department pointed out already carried substantial fines.[33]

Because the legislative history of the 2006 bill demonstrates no intent to change existing law (beyond extending it to traffic safety corridors), we conclude that the intent of the 1998 legislature controls. We therefore hold that AS 28.90.030(a) does not double the range of fines for felony driving under the influence in a traffic safety corridor.

We accordingly vacate Fyfe's $20,000 fine. Because the judge's comments at sentencing make clear that the judge would have imposed the $10,000 mandatory minimum fine for Fyfe's offense if he believed he had the discretion to do so, we direct the superior court to modify the judgment to reflect this mandatory minimum fine.

*Why we conclude that Fyfe's confrontation rights were not violated*

At trial, the State offered evidence that the calibration of the Datamaster machine had been verified before and after Fyfe's breath test as required to ensure that the machine was functioning properly. Fyfe argues that the admission of these verification reports violated his Sixth Amendment right to confront the witnesses against him because the State did not present the testimony of the individual who performed the verifications and prepared the reports.

---

[33] Minutes of House Judiciary Committee, S.B. 261, testimony of Senior Assistant Attorney General Peter Putzier, Department of Law, 2:44:22 p.m. (Apr. 12, 2006). The maximum fine for felony driving under the influence, a class C felony, is $50,000. AS 28.35.030(b); AS 12.55.035(b)(4). The highest possible fine under Title 28 appears to be for using an electronic device while driving and causing the death of a person, a class A felony that carries a maximum fine of $250,000. AS 28.35.161(f)(4); AS 12.55.035(b)(2).

In *Crawford v. Washington*,[34] the United States Supreme Court held that the admission of out-of-court "testimonial" statements violates the defendant's Sixth Amendment right to confrontation unless the defendant (1) is able to cross-examine the person who made the testimonial statements, or (2) the person is unavailable and the defendant had a prior opportunity to cross-examine the person regarding the subject of the statements.[35]

In *Crawford*, the Supreme Court declared that statements in business records are by their nature normally not testimonial.[36] Subsequently, in *Abyo v. State*, we held — in line with the weight of authority in other jurisdictions[37] — that verification of calibration reports are non-testimonial business records under *Crawford*, and that such reports may be admitted against the defendant even if the author of the report is not subject to cross-examination.[38]

After we decided *Abyo*, a plurality of the Supreme Court held in *Melendez -Diaz v. Massachusetts*[39] that the defendant's right to confrontation was violated by the admission of an affidavit by a laboratory analyst asserting that the substance seized from the defendant was cocaine; the Court reached this conclusion because it found that the affidavit was "testimonial" and that the defendant had no opportunity to cross-examine

---

[34]   541 U.S. 36 (2004).

[35]   *Id.* at 53-54.

[36]   *Id.* at 56.

[37]   *Abyo*, 166 P.3d 55, 60 & n.19 (Alaska App. 2007); *see also McCarthy v. State*, 285 P.3d 285, 294 (Alaska App. 2012) (Mannheimer, J., concurring).

[38]   *Abyo*, 166 P.3d at 60.

[39]   557 U.S. 305 (2009).

the author.[40] In *McCarthy v. State*, we addressed whether our decision in *Abyo* was still good law in light of *Melendez-Diaz*, and we concluded that it was.[41] We noted that other courts that had considered the issue after *Melendez-Diaz* had almost uniformly agreed that breath-test machine calibration records are non-testimonial records that may be admitted without the testimony of the person who prepared them.[42]

Fyfe argues that *Abyo* and *McCarthy* were wrongly decided and should be overruled. We adhere to those decisions and uphold the superior court's decision to admit the verification of calibration reports in this case.

*Conclusion*

We VACATE Fyfe's $20,000 fine and direct the superior court to modify the judgment to impose a fine of $10,000, the mandatory minimum fine for felony driving under the influence. In all other respects, we AFFIRM the judgment of the superior court.

---

[40] *Id.* at 307-11.

[41] *McCarthy*, 285 P.3d at 289.

[42] *Id.* at 289 & n.9.