Ronald G. CHAMBERS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–3221.

Court of Appeals of Alaska.

May 24, 1991.

Rex Lamont Butler, Anchorage, for appellant.

David Mannheimer, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and GREENE, Superior Court Judge.[*]

OPINION

BRYNER, Chief Judge.

Ronald G. Chambers appeals his conviction for misconduct involving a controlled substance in the third degree. AS 11.71.-030. Chambers argues that Acting Superior Court Judge Elaine M. Andrews erred in denying his motion for a judgment of acquittal. We affirm.

In the early morning of July 6, 1988, Chambers registered at an Anchorage motel. Later in the day, suspecting that drug activity was taking place in Chambers'

[*] Sitting by assignment made pursuant to article  IV, section 16 of the Alaska Constitution.

room, a hotel clerk notified the police, who obtained a warrant and searched the room. They discovered a quantity of cocaine, some baking soda, and other paraphernalia that led them to believe that Chambers was converting cocaine into "crack" cocaine.

Chambers was indicted for misconduct involving a controlled substance in the third degree under two theories: that he possessed cocaine with the intent to deliver it, or, alternatively, that he possessed cocaine with the intent to manufacture crack.[1]

At trial, the evidence established that the powdery substance in Chambers' room was cocaine hydrochloride, which is a combination of the natural extract of the coca plant and hydrochloric acid. Cocaine hydrochloride is normally referred to simply as cocaine, and this is the form in which cocaine is most commonly used and distributed. In this form, cocaine is water soluble and can readily be absorbed as a powder by the mucous membrane of the nose.

According to the evidence, crack cocaine, in turn, is made by neutralizing cocaine hydrochloride, a process that returns the cocaine to its original form. This is commonly done by adding a base, such as sodium bicarbonate (baking soda) to cocaine hydrochloride and heating the mixture. Crack cocaine is no longer water soluble and thus cannot be absorbed in the nasal passages. However, the substance has a lower melting temperature than cocaine hydrochloride and can be easily heated to the point of vaporization, allowing it to be inhaled directly into the lungs as a gas. Throughout the process of converting organic cocaine to cocaine hydrochloride and back to crack cocaine, the basic cocaine molecule does not change.

At the close of the evidence at trial, Chambers moved for a judgment of acquittal as to the allegation that he possessed cocaine with intent to manufacture crack. Chambers argued, among other things, that converting cocaine into crack does not amount to the "manufacture" of a controlled substance under Alaska law. The trial court denied Chambers' motion and submitted the case to the jury with special verdict forms covering the separate theories of prosecution. The jury returned verdicts acquitting Chambers of possessing cocaine with intent to distribute but convicting of possession with intent to manufacture.

On appeal, Chambers contends that the trial court erred in denying his motion for a judgment of acquittal. He argues that, since the undisputed evidence at trial established that the cocaine molecule remains unchanged, the process of converting cocaine hydrochloride to crack cocaine does not amount to "manufacture" of a controlled substance.[2]

1. In pertinent part, AS 11.71.030 provides:
   (a) Except as authorized in AS 17.30, a person commits the crime of misconduct involving a controlled substance in the third degree if the person
   (1) manufactures or delivers any amount of a schedule IIA or IIIA controlled substance or possesses any amount of a schedule IIA or IIIA controlled substance with intent to manufacture or deliver....

2. At trial, Chambers also argued for a judgment of acquittal on the theory that the Alaska legislature intended to exempt manufacturing for personal consumption from the statutory definition of "manufacture" of a controlled substance. Chambers abandons this argument on appeal. It appears that the trial court correctly rejected this argument. In adopting the definition of "manufacture" currently contained in AS 11.71.-900(13), the legislature specifically provided a personal use exemption for the growing of marijuana but failed to exempt any other form of manufacture on like grounds. The specific exemption for marijuana is a compelling indication of legislative intent to include manufacture for personal use within the ambit of AS 11.71.-900(13) as to all other controlled substances.

   We note that Alaska's decision to limit the personal use exemption to the growing of marijuana differs from the Federal Controlled Substances Act, 21 U.S.C. § 802(15) (Supp.1990) (formerly 21 U.S.C. § 802(14)), and the Uniform Controlled Substances Act (U.C.S.A. § 101(13) (Supp.1991) (formerly U.C.S.A. § 101(m)), both of which generally exempt manufacture for personal use from the definition of "manufacture" as to all controlled substances. We recognize that this difference could lead to problems of interpretation under Alaska law that would not arise under the federal and U.C.S.A. counterparts. Specifically, it is conceivable that, in some situations, the actual ingestion of a controlled substance might technically qualify as "manufacture" under Alaska law. The evidence in the current case, however, presents no such problem. According to the undisputed evi-

In response to Chambers' argument, the state acknowledges that the cocaine molecule remains intact when cocaine hydrochloride is converted to crack. The state nonetheless contends that cocaine hydrochloride and crack are different chemical compounds and that the process of making crack from cocaine involves a chemical alteration. In the state's view, Alaska's statutory definition of manufacturing is sufficiently broad to cover this process. Alaska Statute 11.71.900(13)(A) states, in relevant part, that "manufacture"

> means the production, preparation, propagation, compounding, conversion, growing, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis; however, the growing of marijuana for personal use is not manufacturing....

Chambers replies that the statutory definition of "manufacture" is not as broad as the state submits. Specifically, Chambers focuses on the portion of AS 11.71.900(13)(A) that refers to "extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis...." From this language, Chambers concludes that, under AS 11.71.900(13)(A), "manufacture" can occur only when a process involves "extraction from a substance of natural origin," "chemical synthesis," or a combination of the two.

Chambers insists that the process of converting cocaine hydrochloride to crack cocaine does not fit these pigeonholes. He notes that, because cocaine hydrochloride is not a natural substance, making crack from cocaine hydrochloride does not qualify as extraction from a substance of natural origin. Chambers further claims that the process does not involve chemical synthesis. Relying on *Webster's Encyclopedia of Dictionaries* at 378 (New American Ed.1978), Chambers defines synthesis as

the "uniting of elements to form a compound." Chambers points out that no elements of a compound are united in the process of making crack cocaine from cocaine hydrochloride. Finally, Chambers contends that the conversion process cannot amount to a combination of extraction and synthesis, because neither is individually involved.

Chambers' analysis lacks merit for several reasons. Initially, we note that Chambers' proposed definition of "synthesis" appears narrower than that contained in some commonly used dictionaries. For example, a different version of *Webster's* than that relied on by Chambers defines synthesis as, "the production of a chemical compound by the union of elements or simpler compounds or by the degradation of a complex compound...." *Webster's Third New International Dictionary of the English Language* at 2321 (1966). The same dictionary defines degradation as a "change of a chemical compound to a less complex compound." *Id.* at 594. Under these definitions, the process of converting cocaine hydrochloride into crack qualifies as synthesis.

█ Even assuming Chambers' definition of synthesis were not unduly narrow, Chambers misreads the statutory definition of manufacturing. While Chambers construes the phrase "by extraction from substances of natural origin, or independently by means of chemical synthesis or by a combination of extraction and chemical synthesis" as restricting all of the language in AS 11.71.900(13)(A) that precedes it, the grammatical structure of the section as a whole does not support Chambers' interpretation of this phrase.

Moreover, a comparison of Alaska's provision with the statutes from which it derives indicates that the disputed phrase was meant to be read as an independent clause. In relevant part, Alaska's definition of "manufacture" is taken verbatim from former Uniform Controlled Substances Act (U.C.S.A.) § 101(m). *See* Alas-

dence, the process of converting cocaine into crack was plainly distinct from any act of con-

sumption.

ka State Legislature, *Summary of Senate Judiciary Committee Hearing of March 6, 1981,* at 1. The U.C.S.A. was intended to "create a coordinated and codified system of drug control, similar to that utilized at the federal level...." *Handbook of the National Conference of Commissioners on Uniform State Laws* at 224 (1970). In keeping with this intent, both Alaska's definition of "manufacture" and the definition contained in former U.C.S.A. § 101(m) mirror the definition contained in the Federal Controlled Substances Act, 21 U.S.C. § 801(15) (formerly 21 U.S.C. § 801(14)).

■ The federal definition of "manufacture" differs from the relevant portions of the Alaska and former U.C.S.A. versions only in that it includes the word "or" after the word "indirectly," defining "manufacture" as "the production, preparation, propagation, compounding, or processing of a drug or other substance, either directly or indirectly *or* by extraction from substances of natural origin or independently by means of chemical synthesis...." *Id.* (emphasis added). This use of the disjunctive "or" in the federal definition makes it apparent that the statutory language following the disjunctive—which is the disputed language in this case—was not meant to modify or restrict the language that precedes the disjunctive.

There is no indication that the omission of the "or" from former U.C.S.A. § 101(m) or from the virtually identical language of AS 11.71.900(13)(A) was intended to effect any substantive alteration of the federal definition. To the contrary, as we have noted, our legislature appears to have intended to follow the federal law. Notably, the U.C.S.A. definition of "manufacture" was amended in 1990 to restore the originally omitted "or." *See* U.C.S.A. § 101(13) (1990). We see no basis for construing the pertinent portions of AS 11.71.900(13)(A) differently than the federal statute.

■ It is instructive that, under federal law, the conversion of cocaine hydrochloride to crack appears to be routinely prosecuted as manufacturing. While the precise issue raised by Chambers in this case is apparently one of first impression, convictions for manufacturing crack from cocaine have been upheld on appeal in federal courts. *See, e.g., United States v. Thomas,* 895 F.2d 1198 (8th Cir.1990); *United States v. Houston,* 892 F.2d 696 (8th Cir. 1989).

We conclude that sufficient evidence was presented to allow reasonable jurors to find that the process of converting cocaine hydrochloride into crack cocaine involved the direct "production, preparation, propagation, compounding, conversion, growing, or processing of a controlled substance...." AS 11.71.900(13)(A). For this reason, the jury could properly find that Chambers' possession of cocaine hydrochloride with intent to convert it to crack cocaine amounted to possession with intent to manufacture. The trial court did not err in denying Chambers' motion for a judgment of acquittal.

The conviction is AFFIRMED.

MANNHEIMER, J., not participating.