*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| STATE OF ALASKA, | ) | |
| | ) | Supreme Court No. S-15687 |
| Petitioner, | ) | Court of Appeals No. A-11058 |
| | ) | |
| v. | ) | Superior Court No. 3PA-10-03464 CR |
| | ) | |
| LINDEN K. FYFE, | ) | O P I N I O N |
| | ) | |
| Respondent. | ) | No. 7094 - March 25, 2016 |
| | ) | |

Petition for Hearing from the Court of Appeals of the State of Alaska, on Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, David L. Zwink, Judge.

Appearances: Mary A. Gilson, Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Petitioner. Kelly Taylor, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Respondent.

Before: Stowers, Chief Justice, Fabe, Maassen, and Bolger, Justices. [Winfree, Justice, not participating.]

MAASSEN, Justice.

## I. INTRODUCTION

Linden Fyfe was stopped by police while driving on a stretch of highway designated as a traffic safety corridor. He was charged and convicted of driving under

the influence of alcohol, a violation of AS 28.35.030. At sentencing the trial court imposed double the statutory minimum fine, relying on another statute, AS 28.90.030(a), that doubles "the fine, or maximum fine," for any violation of a provision of Title 28 in a traffic safety corridor. The court of appeals reversed. It concluded that despite the statute's plain language, the legislature intended fines to be doubled only for non-criminal traffic offenses.

We disagree with the court of appeals' rationale, though not its mandate. We conclude that the contrary legislative history is not convincing enough to overcome the plain language of AS 28.90.030(a), and the statute therefore applies to both criminal and non-criminal traffic offenses under Title 28. But we also hold that the plain language of the statute precludes its application to *minimum* fines such as the one at issue here. On that ground we affirm the court of appeals' decision to vacate Fyfe's fine and remand for imposition of the statutory minimum fine.

## II. FACTS AND PROCEEDINGS

A state trooper stopped Linden Fyfe on the Parks Highway after observing that Fyfe's vehicle was missing a muffler and the license plate was obscured. The trooper later testified that Fyfe was shaking, slurred his words, and smelled of alcohol. After a Datamaster breathalyzer test showed that Fyfe's blood alcohol level was 0.117%, he was charged with felony driving under the influence (DUI).[1] At trial he raised the defense of necessity, testifying that he had to drive because his girlfriend's daughter, whom he had helped raise from infancy, had been admitted to the hospital after an apparent seizure. The jury rejected the defense and convicted him.

---

[1] A blood alcohol level of 0.08% or above is one element of the crime of driving under the influence. AS 28.35.030(a)(2).

At sentencing the State relied on AS 28.90.030(a), which doubles "the fine, or maximum fine" for any violation of "a provision of this title" that occurs "within a highway work zone or traffic safety corridor." It was the State's position that the mandatory minimum fine for driving under the influence had to be doubled — from $10,000 to $20,000 — based on the uncontested fact that Fyfe's offense occurred on a stretch of highway designated as a traffic safety corridor. The superior court sentenced Fyfe to 20 months in prison with 16 months suspended and imposed a $20,000 fine; it remarked, however, that it would have imposed a fine of half that amount if not for the statutory mandate.

Fyfe appealed his conviction to the court of appeals. He argued in part that the $20,000 fine was illegal because the legislature did not intend to double the fine for felony driving under the influence in a traffic safety corridor.[2] The court of appeals agreed and vacated the fine.[3] It noted that although the plain language of AS 28.90.030(a) would seem to double fines for *all* offenses found in Title 28, Alaska's canons of statutory construction require that courts also consider legislative history.[4] The court of appeals concluded that this history reveals a legislative intent to limit the fine-doubling provision to non-criminal traffic offenses, thus excluding criminal offenses like Fyfe's felony DUI.[5]

The State filed a petition for hearing, asking us to review the court of appeals' interpretation of AS 28.90.030(a). We granted review.

---

[2] *Fyfe v. State*, 334 P.3d 183, 184 (Alaska App. 2014).

[3] *Id.* at 185-90.

[4] *Id.* at 185.

[5] *Id.* at 185-87.

## III. STANDARD OF REVIEW

"The interpretation of a statute . . . is a question of law to which we apply our independent judgment."[6] "We do not mechanically apply the plain meaning rule, using instead a sliding scale approach to statutory interpretation, in which 'the plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be.' "[7] "[W]e interpret the statute according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[8] No one factor in this analysis is dispositive, but "[w]here a statute's meaning appears clear and unambiguous, . . . the party asserting a different meaning bears a correspondingly heavy burden of demonstrating contrary legislative intent."[9] If the party does not satisfy this burden, then "legislative history [that] is somewhat contrary . . . does not overcome the plain meaning."[10]

---

[6] *Alaska Judicial Council v. Kruse*, 331 P.3d 375, 379 (Alaska 2014) (alteration in original) (quoting *West v. State, Bd. of Game*, 248 P.3d 689, 694 (Alaska 2010)).

[7] *Adamson v. Municipality of Anchorage*, 333 P.3d 5, 11 (Alaska 2014) (quoting *McDonnell v. State Farm Mut. Auto. Ins. Co.*, 299 P.3d 715, 721 (Alaska 2013)).

[8] *State, Div. of Workers' Comp. v. Titan Enters., LLC*, 338 P.3d 316, 320 (Alaska 2014).

[9] *Univ. of Alaska v. Geistauts*, 666 P.2d 424, 428 n.5 (Alaska 1983); *see also State v. Alex*, 646 P.2d 203, 208 n.4 (Alaska 1982) ("[T]he plainer the language, the more convincing contrary legislative history must be." (quoting *United States v. U.S. Steel Corp.*, 482 F.2d 439, 444 (7th Cir. 1973))).

[10] *Oels v. Anchorage Police Dep't Emps. Ass'n*, 279 P.3d 589, 597 (Alaska 2012).

## IV. DISCUSSION

### A. The Plain Language Of AS 28.90.030(a) Is Not Overcome By Its Legislative History.

The trial court applied AS 28.90.030(a) to double the minimum sentence for Fyfe's offense. The statute provides:

> Whenever a person violates a provision of this title or a regulation adopted under the authority of this title within a highway work zone or traffic safety corridor, notwithstanding the amount of the fine or the maximum fine set under this title, the fine, or maximum fine, is double the amount provided in this title.

"[T]his title" — Title 28 — includes non-criminal traffic infractions;[11] it also includes provisions that impose criminal liability, both misdemeanors and felonies, such as the DUI statute under which Fyfe was convicted.[12] As applied to all these offenses, the language of AS 28.90.030(a) is clear on its face: it applies "[w]henever a person violates a provision of this title" — regardless of whether the violation is an infraction, a misdemeanor, or a felony.

The court of appeals agreed with this plain-language interpretation.[13] But it went on to conclude that the legislature did not intend the fine-doubling provision of

---

[11]    *See, e.g.*, AS 28.35.140 (classifying unlawful obstruction of traffic as an infraction).

[12]    *See, e.g.*, AS 28.90.010(a) (imposing misdemeanor liability for any violation that is not declared a felony or infraction); AS 28.35.030(n) (imposing felony liability for a third driving under the influence conviction within ten years).

[13]    *Fyfe v. State*, 334 P.3d 183, 185 (Alaska App. 2014) ("This provision, on its face, would seem to mandate a double fine for any driving under the influence offense committed in a traffic safety corridor because the offense of driving under the influence is a provision of Title 28.").

AS 28.90.030(a) to extend to felony driving under the influence because the statute's legislative history overcomes its plain language.[14] We disagree. Although there is some legislative history on each side of the issue, we conclude that the history contrary to the statute's plain language is not convincing enough to overcome it.

**1.    The 1998 legislative history does not require limiting AS 28.90.030(a) to non-criminal traffic offenses.**

The court of appeals' analysis rests on the conclusion that the legislature intended AS 28.90.030 to apply only to non-criminal traffic offenses.[15] As the court of appeals noted, AS 28.90.030 has its origins in former AS 28.40.070, a 1999 statute imposing double fines for "offenses committed within highway work zones."[16] The legislation creating the statute, first introduced in 1997 as House Bill 87, provided in relevant part:

> Whenever a person violates a provision of this title *relating to speeding*, or a regulation adopted under the authority of this title *relating to speeding, or is convicted of reckless driving* under AS 28.35.040 *or negligent driving* under AS 28.35.045 within a highway work zone, notwithstanding the amount of the fine or the maximum fine set under this title, the fine, or maximum fine, is double the amount

---

[14]    *Id.* at 189.

[15]    *Id.* at 187.

[16]    Former AS 28.40.070 (1999). That statute provided:

Whenever a person violates a provision of this title or a regulation adopted under the authority of this title within a highway work zone, notwithstanding the amount of the fine or the maximum fine set under this title, the fine, or maximum fine, is double the amount provided in this title.

provided in this title.[17]

This original bill was thus limited in scope, doubling fines for only three Title 28 violations in highway work zones:  speeding, reckless driving, and negligent driving.

But House Bill 87 did not become law.[18]  Senate Bill 304 was enacted instead as former AS 28.40.070, containing much the same language as the current law, AS 28.90.030(a).[19]  Senate Bill 304 required double fines more broadly than House Bill 87 had — i.e., "[w]henever a person violates a provision of [Title 28] or a regulation under the authority of [Title 28] within a highway work zone."[20]  This expansion of scope ostensibly applied the double fine requirement to all traffic violations addressed by Title 28, regardless of whether they were criminal or non-criminal offenses.

The court of appeals noted, however, that some legislative history militates against this plain-language reading.  The only testimony the Senate Transportation Committee heard about then-existing fines during hearings on Senate Bill 304 involved the maximum fine for a traffic infraction, which was $300;[21] the court of appeals inferred from this that the legislature anticipated that fines doubled under the law "would

---

[17]     House Bill (H.B.) 87, 20th Leg., 1st Sess. (1997) (emphases added).

[18]     *See* 1998 House Journal 2603.

[19]     Committee Substitute for Senate Bill (C.S.S.B.) 304, 20th Leg., 2d Sess. (1998); 1998 Senate Journal 4273.

[20]     C.S.S.B. 304 (RLS).

[21]     Minutes, Sen. Transp. Comm. Hearing on Senate Bill (S.B.) 304, 20th Leg., 2d Sess. Tape 98-4 Side B (Feb. 24, 1998) (testimony of Capt. Ted Bachman, Alaska State Troopers).

generally not exceed $600."[22]  But this limitation is not reflected in the statutory language.  The court of appeals also quoted Senator Dave Donley, the bill's sponsor, advising the Senate Transportation Committee "that the legislation 'does not deal with criminal law, only traffic violations.' "[23]  This correctly characterizes the senator's statement as it appears in the hearing minutes,[24] but the audio recording reveals something different.[25]  Senator Donley was not describing the bill's fine-doubling provision, but rather a separate section of the bill that proposed adding a new section to AS 28.35 that would make it a traffic infraction to drive in the left lane of a divided highway; his remarks made no distinction between criminal and non-criminal offenses in the context of the fine-doubling provision.[26]

The court of appeals also considered the 1998 legislature's concurrent amendment to AS 28.05.151 — another part of Senate Bill 304 — directing the supreme court and municipalities with bail and fine schedules to provide new schedules for

---

[22]     *Fyfe v. State*, 334 P.3d 183, 186 (Alaska App. 2014).

[23]     *Id.* (quoting Minutes, Sen. Transp. Comm. Hearing on S.B. 304, 20th Leg., 2d Sess. (Feb. 24, 1998) (statement of Senator Dave Donley)).

[24]     Minutes, Sen. Transp. Comm. Hearing on S.B. 304, 20th Leg., 2d Sess. (Feb. 24, 1998) (statement of Senator Dave Donley) ("[Donley] noted S.B. 304 does not deal with criminal law, only with traffic violations.").

[25]     Statement of Senator Dave Donley at 00:03:08-00:05:06, Hearing on S.B. 304 Before the Sen. Transp. Comm., 20th Leg., 2d Sess. (Feb. 24, 1998).

[26]     Statement of Senator Dave Donley at 00:04:55-00:05:06, Hearing on S.B. 304 Before the Sen. Transp. Comm., 20th Leg., 2d Sess. (Feb. 24, 1998) ("[W]ith those exceptions, you should try to stay to the right and out of that far lane.  But it's only — if you do it, it's just a ticket, it's just an infraction.  We're not dealing with criminal law here, Mr. Chairman, we're just dealing with traffic violations."); *see* S.B. 304 § 3, 20th Leg., 2nd Sess. (1998) (as introduced on Feb. 16, 1998).

violations in highway work zones that would "double the amount of the bail or fine for the offense if it had not been committed in a highway work zone."[27] The court of appeals read this amendment and AS 28.90.030 together to conclude that "it seems likely that the legislature understood the double-fine requirement to apply . . . only to offenses amenable to disposition without court appearance[,] and not to fines imposed as part of a sentence for a criminal offense."[28]

We do not read the amendment to AS 28.05.151 in the same way. While it does show the legislature's intent to double the fines for non-criminal traffic offenses, there is no evidence it was intended to define the entire reach of AS 28.90.030(a). It directs municipalities and the supreme court to double fines that are set by those bodies rather than by the legislature. A corresponding directive for criminal offenses was unnecessary because sentences in such cases are codified by the legislature itself. Thus, although the amendment to AS 28.05.151 certainly furthered the overall purpose of AS 28.90.030, we do not read it as limiting the types of violations made subject to double fines.

We conclude that while there are some aspects of the 1998 legislative history contrary to the plain meaning of AS 28.90.030, evidence of a contrary intent is not convincing enough to overcome the unambiguously comprehensive language the legislature chose to adopt.

**2.      The legislature did not narrow the scope of AS 28.90.030(a) in 2006.**

The legislature amended AS 28.40.070 in 2006 to extend the double fine

---

[27]      *Fyfe*, 334 P.3d at 186 (quoting ch. 64, § 1, SLA 1998).

[28]      *Id.* at 186-87.

provision to traffic safety corridors as well as highway work zones.[29]  The court of appeals noted that the provisions of the "original act . . . repeated in [the 2006] amendment are considered as a continuation of the original act," and it therefore extended its analysis of legislative history to that surrounding the amendment.[30]  As the court of appeals also observed, the governor's transmittal letter accompanying the 2006 legislation indicated that the only change intended to the existing law was its extension to traffic safety corridors,[31] and there is no indication that the legislature meant to alter the meaning or reach of the original statute in any other way.[32]  We agree with that part of the court of appeals' analysis, but we reach a different conclusion because of our different reading of the original statute.

Reviewing the 2006 legislative history, we again do not find convincing evidence of a legislative purpose contrary to the statute's plain language.  The committee debate about traffic safety corridors did address the enforcement of drunk driving laws.  The Department of Transportation and Public Facilities presented maps to several

---

[29]  Ch. 45, § 4, SLA 2006.  That legislation provided:

Whenever a person violates a provision of this title or a regulation adopted under the authority of this title within a highway work zone or traffic safety corridor, notwithstanding the amount of the fine or the maximum fine set under this title, the fine, or maximum fine, is double the amount provided in this title.

[30]  *Fyfe*, 334 P.3d at 187 (quoting *Green v. State*, 462 P.2d 994, 1000 (Alaska 1969)).

[31]  *Id.* (citing 2006 Senate Journal 2037 (governor's January 31, 2006 transmittal letter for S.B. 261, 24th Leg., 2d Sess. (2006))).

[32]  *Id.* at 187-89.

committees that showed the fatal or major accidents between 1977 and 2005 on five different stretches of road, identifying those accidents that involved drugs or alcohol;[33] legislators' responses showed clear concern with reducing such offenses.[34] There was some discussion in the Senate Transportation Committee in particular about ways to deal with alcohol-impaired drivers.[35]

On the other hand, there is no testimony directly linking the fine-doubling provision to drunk driving, despite a number of references that make the link to speeding.[36] And testimony by administration witnesses repeatedly referenced "traffic

---

[33] *See* Working Files of Sen. Transp. Comm., 24th Leg., 2d Sess., Alaska Leg. Microfiche Collection No. 12072 (containing maps of Parks Highway and Seward Highway); Working Files of Sen. Fin. Comm., 24th Leg., 2d Sess., Alaska Leg. Microfiche Collection No. 3080 (containing maps of Parks Highway, Seward Highway, Sterling Highway, Palmer/Wasilla Highway, and Knik/Goose Bay Road).

[34] Statement of Senator Hollis French at 1:39:42-1:40:03, Hearing on S.B. 261 Before the Sen. Transp. Comm., 24th Leg., 2d Sess. (Feb. 9, 2006) ("The classic Seward Highway accident is someone drifting into oncoming traffic. That really seems to be what's killing people and for whatever terrible reason, it always seems to be that . . . a younger, either intoxicated or speeding individual, is killing . . . folks my age."); Statement of Senator Charlie Huggins at 2:18:45-2:19:03, Hearing on S.B. 261 Before the Sen. Transp. Comm., 24th Leg., 2d Sess. (Feb. 9, 2006) (asking a trooper witness for his professional opinion of the number of fatal accidents arising out of drug and alcohol abuse).

[35] *See* Comments of Senator John Cowdery at 1:45:52-1:47:15, Hearing on S.B. 261 Before the Sen. Transp. Comm., 24th Leg., 2d Sess. (Feb. 9, 2006) (suggesting impounding vehicles of intoxicated drivers even if the driver was not the owner); Comments of Senators John Cowdery and Hollis French at 1:38:18-1:40:20, Hearing on S.B. 261 Before the Sen. Transp. Comm., 24th Leg., 2d Sess. (Feb. 9, 2006) (discussing use of concrete dividers to deter inexperienced or intoxicated drivers from drifting into oncoming lanes).

[36] Testimony of Lt. James Helgoe, Alaska State Troopers at 2:08:52-2:09:18,
(continued...)

fines" as the enforcement tool at issue,[37] a category that could be read as excluding

            [36](...continued)
Hearing on S.B. 261 Before the Sen. Transp. Comm., 24th Leg., 2d Sess. (Feb. 9, 2006) (stating that traffic safety corridors "will act as a deterrent against aggressive driving and speeding" and that studies have shown that traffic safety corridors "create a calming effect on the traffic and on the drivers because of several factors, one being the public's awareness through campaign and through signage and also the risk of increased fines"); Testimony of John MacKinnon, Deputy Comm'r, Dep't of Transp. & Pub. Facilities at 2:34:20-2:34:33, Hearing on S.B. 261 Before the House Judiciary Comm., 24th Leg., 2d Sess. (Apr. 12, 2006) (noting that speeding fines generally ranged from $75 to $100, and that if "we double that[,] . . . that's a lot of money"); Question from Co-Chair Lyda Green at 9:33:15-9:33:35, Hearing on C.S.S.B. 261 (TRA) Before the Sen. Fin. Comm., 24th Leg., 2d Sess. (Mar. 21, 2006) (asking whether doubling fines in highway construction zones had made a "noticeable difference" in speeding); Question of Representative Mike Chenault at 3:48:08-3:48:26, Hearing on C.S.S.B. 261 (JUD) Before the House Fin. Comm., 24th Leg., 2d Sess. (Apr. 25, 2006) ("But there's no intent with this bill to change the current speed limit in the particular areas within the zone?  It's just to change the fine to a double fine if you're caught speeding?"); Testimony of Mary Siroky, Special Assistant, Dep't of Transp. & Pub. Facilities at 3:48:26-3:48:29, Hearing on C.S.S.B. 261 (JUD) Before the House Fin. Comm., 24th Leg., 2d Sess. (Apr. 25, 2006) (stating that Representative Chenault's foregoing assumption was correct, and that the bill was also intended to increase enforcement in the traffic safety corridors).

            [37]     *See, e.g.*, Testimony of John MacKinnon, Deputy Comm'r, Dep't of Transp. & Pub. Facilities at 2:20:53-2:21:04, Hearing on H.B. 417 Before the House Transp. Comm., 24th Leg., 2d Sess. (Mar. 21, 2006) ("This bill is aimed at trying to get a handle on driver behavior by allowing us to increase enforcement and collect double traffic fines."); Testimony of John MacKinnon, Deputy Comm'r, Dep't of Transp. & Pub. Facilities at 2:08:01-2:08:10, Hearing on S.B. 261 Before the Sen. Transp. Comm., 24th Leg., 2d Sess. (Mar. 9, 2006) ("And along with the establishment of the safety corridor and the associated signage is double traffic fines in that area and increased enforcement."). *But cf.* Testimony of Jeff Ottesen, Director, Div. of Program Dev., Dep't of Transp. & Pub. Facilities at 1:37:56-1:38:02, Hearing on S.B. 261 Before the Sen. Transp. Comm., 24th Leg., 2d Sess. (Feb. 9, 2006) (referencing "fines" generically but noting that fines would be doubled for traffic safety corridors "like we now do for
(continued...)

criminal fines.

As the court of appeals acknowledged, however, legislators in 2006 could have "assumed — . . . reasonably given the broad language of the statute — that the 1999 statute already doubled fines for criminal motor vehicle offenses committed in highway work zones."[38] Indeed, a question by Representative Max Gruenberg — whether the fine-doubling provision should be extended to Title 11 criminal offenses such as vehicular homicide and assault with a dangerous instrument — suggested his understanding that Title 28 criminal offenses were already addressed by the law.[39] The court of appeals interpreted the response from the Department of Law to mean that the Department "did not understand the legislation to double fines for felony motor vehicle offenses, which the Department pointed out already carried substantial fines."[40] But we consider the Department's response unclear and ambiguous at best; it could be read as suggesting simply that whether to extend the fine-doubling provision to criminal offenses under Title 11 *as well as* the already-covered offenses in Title 28 was a policy call on

---

[37](...continued) construction work zones").

[38]    *Fyfe v. State*, 334 P.3d 183, 188 (Alaska 2014).

[39]    Question from Representative Max Gruenberg at 2:42:35-2:43:33, Hearing on C.S.S.B. 261 (FIN) Before House Judiciary Comm., 24th Leg., 2d Sess. (Apr. 12, 2006); *cf.* Comments of Representative Max Gruenberg at 2:44:59-2:45:02, Hearing on C.S.S.B. 261 (FIN) Before House Judiciary Comm., 24th Leg., 2d Sess. (Apr. 12, 2006) (noting that Title 28 includes some criminal offenses).

[40]    *Fyfe*, 334 P.3d at 189 (citing Testimony of Peter Putzier, Senior Assistant Attorney Gen., Dep't of Law at 2:44:22, Hearing on C.S.S.B. 261 (JUD) Before the House Judiciary Comm., 24th Leg., 2d Sess. (Apr. 12, 2006)).

which the Department had not taken a position.[41]

Again, the legislative history convinced the court of appeals that the 2006 legislature did not intend to change the reach of AS 28.90.030(a) apart from extending it to traffic safety corridors, and thus it held that "the intent of the 1998 legislature controls."[42] We agree that the intent of the statute remained the same, though we hold, unlike the court of appeals, that the statute must be given its plain meaning. In short, we do not find contrary legislative history in either 1998 or 2006 sufficiently convincing to overcome the statute's plain language, especially in light of the broad legislative goal of improving safety and reducing traffic accidents on the affected stretches of highway. We hold that AS 28.90.030(a) applies to both criminal and non-criminal offenses in Title 28.

**B.     Alaska Statute 28.90.030(a) Does Not Double Statutory Minimum Fines.**

Since the fine-doubling provision of AS 28.90.030(a) applies to both criminal and non-criminal offenses under Title 28, we must decide whether the provision doubles a mandatory minimum fine like the one at issue here.[43] The statute provides in relevant part that "notwithstanding the amount of the fine or the maximum fine set under

---

[41]     Testimony of Peter Putzier, Senior Assistant Attorney Gen., Dep't of Law at 2:44:30-2:54:14, Hearing on C.S.S.B. 261 (JUD) Before the House Judiciary Comm., 24th Leg., 2d Sess. (Apr. 12, 2006) ("I think that's primarily a policy call whether we want to double the fines both for criminal conduct. . . . I think that doubling the fine for felonies, for example, well, I believe reckless driving . . . is [in] Title 28. If we got into the felonies, I think doubling it is probably sufficient.").

[42]     *Fyfe*, 334 P.3d at 189.

[43]     AS 28.35.030(n)(1) requires "a fine of not less than $10,000" for a person convicted of felony driving under the influence.

this title, *the fine, or maximum fine*, is double the amount provided in this title."[44]  We construe this language in accordance with the common rules of grammar,[45] by which "or" signals the disjunctive,[46] and also in accordance with the principle of *expressio unius est exclusio alterius*, which directs us to "presume that a statute designating only certain powers excludes those not specifically designated."[47]  We also "presume that no words or provisions are superfluous and that the legislature intended 'every word, sentence, or provision of a statute to have some purpose, force, and effect.' "[48]  Applying those principles, we conclude that minimum fines are not affected by the statutory mandate.

Various provisions of Title 28 provide for three distinct types of fines: fines in a set amount, maximum fines, and minimum fines.[49]  Alaska Statute

---

[44]    AS 28.90.030(a) (emphasis added).

[45]    AS 01.10.040(a) ("Words and phrases shall be construed according to the rules of grammar and according to their common and approved usage."); *Emp't Sec. Comm'n v. Wilson*, 461 P.2d 425, 428 (Alaska 1969) ("Because we may assume that the legislature knew and understood the rules of grammar, we are justified in relying on such rules in the interpretation of our laws.").

[46]    *See Acosta v. City of Costa Mesa*, 718 F.3d 800, 815 (9th Cir. 2013) (citing "the common rule of statutory construction that gives disjunctive and distinct meaning to items separated by the word 'or' ").

[47]    *State, Dep't of Revenue v. Deleon*, 103 P.3d 897, 900 (Alaska 2004) (citing *Croft v. Pan Alaska Trucking, Inc.*, 820 P.2d 1064, 1066 (Alaska 1991)).

[48]    *Adamson v. Municipality of Anchorage*, 333 P.3d 5, 16 (Alaska 2014) (quoting *Monzulla v. Voorhees Concrete Cutting*, 254 P.3d 341, 345 (Alaska 2011)).

[49]    *See, e.g.*, AS 28.22.019(c) (imposing a mandatory fine of $500 for failing to have proof of insurance); AS 28.35.400(b) (imposing a maximum fine of $1000 for reckless driving); AS 28.35.032(g) (imposing minimum fines for refusal to submit to a
(continued...)

28.90.030(a) specifically affects "the fine, or maximum fine." The State contends that it was unnecessary to expressly list minimum fines because the term "fine" includes all three types of fines. But then why list maximum fines separately? Answering this charge of redundancy, the State contends that the legislature reiterated "maximum fine" — even though already included in "fine" — to emphasize that AS 28.90.030(a) permits the sentencing court to exceed the original statutory maximum; otherwise, the State argues, a sentencing court might have assumed that the fine it imposed was still bounded by the maximum originally set for that specific offense.

But the usual grammatical function of the word "or" is "to mark an alternative such as either this or that."[50] Thus, a word separated from another word by "or" is ordinarily "interpreted to mean something distinct."[51] This means that "maximum fine" is most likely to mean "something distinct" from "fine." And if the legislature had instead intended "maximum fine" to be a mere subset of "fine," the most obvious way to convey such an intent would have been with the words "fine, *including* maximum fine."[52]

---

[49](...continued)
chemical test).

[50]    *In re Jesusa V.*, 85 P.3d 2, 24 (Cal. 2004) (quoting *Houge v. Ford*, 285 P.2d 257, 260 (Cal. 1955)).

[51]    *Acosta*, 718 F.3d at 815; *see also Chambers v. State*, 811 P.2d 318, 321 (Alaska App. 1991) ("This use of the disjunctive 'or' in the federal definition makes it apparent that the statutory language following the disjunctive — which is the disputed language in this case — was not meant to modify or restrict the language that precedes the disjunctive.").

[52]    *See In re S.A.*, 912 P.2d 1235, 1245 n.3 (Alaska 1996), *superseded on other grounds by statute*, ch. 99, § 1(b)(2)(B), SLA 1998, *as recognized in Rowan B., Sr. v. State, Dep't of Health & Soc. Servs.*, 320 P.3d 1152, 1158 n.24 (Alaska 2014)
(continued...)

Concluding that the words "maximum fine" are not a redundancy, we consider whether the legislature's express inclusion of "maximum fine" indicates its intent to *exclude* "minimum fine." The principle of *expressio unius est exclusio alterius* — with which the legislature is presumptively familiar[53] — supports that intent. Assuming as we must that the legislature chose its words deliberately, avoided redundancies, and omitted words it intended to omit, the phrase "the fine, or maximum fine" in AS 28.90.030(a) does not include minimum fines. If the legislature had intended AS 28.90.030(a) to affect the minimum fines set by Title 28, it would have said so expressly for the same reason it listed maximum fines expressly — to signal that the original minimum had been replaced by a new statutory minimum. Accordingly, we conclude that the phrase "the fine, or maximum fine" refers to set fines and maximum fines but not minimum fines.

Again, we would depart from this plain reading of the statute if we were convinced that a different reading was required by legislative history.[54] We will

---

[52](...continued)
("According to *Webster's Third New International Dictionary* 1142 (1969), 'include' means 'to place, list, or rate as a part or component of a whole or of a larger group, class, or aggregate.' ").

[53]     *See, e.g.*, *State v. Sutherland*, 804 P.2d 970, 977 (Kan. 1991) ("The legislature is aware of this court's established rules of statutory construction."); *People v. Costner*, 870 N.W.2d 582, 585 (Mich. App. 2015) ("[I]t is presumed that the Legislature is familiar with the rules of statutory construction."); *GEA Integrated Cooling Tech. v. State, Taxation & Rev. Dep't*, 268 P.3d 48, 52 (N.M. App. 2011) ("[p]resuming the Legislature is aware of our case law, prior statutes, and canons of construction," and concluding that the legislature's failure to require retroactive application of new tax penalties meant that pre-amendment penalties applied to assessment periods before amendment).

[54]     *DeVilbiss v. Matanuska-Susitna Borough*, 356 P.3d 290, 295 (Alaska

sometimes interpret a statute expansively if an expansive interpretation "will accomplish beneficial results, serve the purpose for which the statute was enacted, [or] is a necessary incidental to a power or right."[55] We have applied an expanded interpretation of a statute when strict application of the *expressio unius* rule of construction would contravene the purpose of the statute or make it illegal.[56] But in the criminal context we have declined to find additional sanctions implied in statutes that already enumerate sanctions, even when an expanded interpretation would theoretically promote a statute's underlying goals of safety and deterrence.[57]

The focus of AS 28.90.030(a) on set fines and maximum fines appears to be a reasonable one. The legislature doubled fines in cases in which the judge has no discretion about the amount — those involving set fines — and it doubled the maximum in cases in which the judge's discretion to *increase* the fine was bounded by statute. It left alone cases in which the judge's discretion to increase the fine was already

---

[54](...continued)
2015).

[55] *Chevron U.S.A., Inc. v. LeResche*, 663 P.2d 923, 931 (Alaska 1983) (alteration in original) (citing 2A C. SANDS, et al., SUTHERLAND STATUTORY CONSTRUCTION § 47.25 (4th ed. 1973)).

[56] *See Ellingstad v. State, Dep't of Nat. Res.*, 979 P.2d 1000, 1006 (Alaska 1999) (declining to apply a narrow interpretation that would impede the State's interest in conveying land); *Sonneman v. Hickel*, 836 P.2d 936, 939-40 (Alaska 1992) (noting that the fund in question would violate the anti-dedication clause without an expanded interpretation).

[57] *See Sprague v. State*, 590 P.2d 410, 415-16 (Alaska 1979) (holding that punitive damages are excluded where a criminal statute lists fine or restitution for actual damages as sanctions); *Puller v. Municipality of Anchorage*, 574 P.2d 1285, 1287 (Alaska 1978) (holding that refusal to submit to chemical test was inadmissible at trial, since this was not among the enumerated consequences of the statute).

unrestricted — those involving minimum fines. A judge applying a statute that sets only a minimum fine continues to have the discretion to increase or double the fine to reflect the fact that the offense occurred in a highway work zone or traffic safety corridor.[58] Thus all defendants convicted of offenses addressed by AS 28.90.030(a) face the prospect of higher fines. Interpreting the statute to double minimum fines set under Title 28 would limit a sentencing judge's discretion in a way not mandated by the plain language of the statute. Nor does the State point to contrary legislative history, other than legislators' general statements about improving highway safety. We conclude that an expansive reading of AS 28.90.030(a) is not justified.

Because AS 28.90.030(a) does not double statutory minimum fines, it does not double the minimum fine set by AS 28.35.030(n) for driving under the influence.

## V.    CONCLUSION

We AFFIRM on different grounds the court of appeals' order vacating Fyfe's $20,000 fine, and we REMAND the case to the trial court with instructions to impose the statutory minimum fine of $10,000.

---

[58]    *See State v. Chaney*, 477 P.2d 441, 443-47 (Alaska 1970) (holding that the court must impose a sentence that effectuates the defendant's reformation, expresses community condemnation, reaffirms societal norms, and reflects the wrongfulness of the defendant's conduct).